UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. _____

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

A.    $75,466.10 seized from Commonwealth Business Bank account #350000527, held in the name of Urban Realty Management, Inc.;

B.    $75,662.60 seized from J.P. Morgan Chase Bank account #787569737, held in the name of Phoenix Hospitality Holdings, LLC;

C.    $1,576.35 seized from Wells Fargo Bank account #7925580768, held in the name of W Square Group;

D.    $594,168.50 seized from Zions Bancorporation account #981266232, held in the name of Broadbent Law, LLC; and

E.    $102,964 in Evolve Bank and Trust account #9600001123218069, held in the name of Talysman Global, Ltd.

        Defendants.

---

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

    The plaintiff, United States of America, through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Lucas B. Draisey, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.      This is an action to civilly forfeit nearly $850,000 traceable to the proceeds of a wire fraud scheme perpetrated against the City of Cottage Grove, Minnesota ("the City").

2.      The City fell victim to a business-email compromise scheme in the fall of 2021 in which an unidentified subject or subjects falsely posed as a legitimate contractor with whom the City was doing business using a "lookalike" email address. The imposter fraudulently induced the City to cause over $1.2 million to be transmitted by wire to accounts and entities that bore no relationship to the legitimate contractor.

3.      Having traced and seized or judicially restrained most of the fraudulently obtained funds, the United States now seeks to forfeit for its use and benefit the Defendants *in rem* under 18 U.S.C. § 981(a)(1)(A) and (C).

## THE DEFENDANTS *IN REM*

4.      The Defendants *in rem* are the following properties:

A.      $75,466.10 seized from Commonwealth Business Bank account #350000527, held in the name of Urban Realty Management, Inc. ("Defendant Property A");

B.      $75,662.60 seized from J.P. Morgan Chase Bank account #787569737, held in the name of Phoenix Hospitality Holdings, LLC ("Defendant Property B");

C.      $1,576.35 seized from Wells Fargo Bank account #7925580768, held in the name of W Square Group ("Defendant Property C");

D.      $594,168.50 seized from Zions Bancorporation account # 981266232, held in the name of Broadbent Law, LLC ("Defendant Property D"); and

      E.     $102,964 judicially restrained in Evolve Bank and Trust account #9600001123218069, held in the name of Talysman Global, Ltd. ("Defendant Property E").

5.      Defendant Properties A through D were seized by the United States Department of Homeland Security, Homeland Security Investigations, pursuant to federal seizure warrants signed by United States Magistrate Judge John F. Docherty on August 1, 2022.

6.      Defendant Property E is subject to a federal seizure warrant also signed by United States Magistrate Judge John F. Docherty on August 1, 2022. But Defendant Property E has not been seized because it is held by a bank located outside the United States. Instead, it is frozen in the custody of Evolve Bank and Trust and is subject to a judicial restraining order issued on February 7, 2023 by the Crown Court of Southwark, in London, England, United Kingdom.

7.      The Defendant Properties are forfeitable under 18 U.S.C. § 981(a)(1)(A) as property "involved in a transaction or attempted transaction in violation of section . . . 1957 . . . of this title, or any property traceable to such property." 18 U.S.C. § 1957 provides criminal punishments for any person who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000." The Defendant Properties are "criminally derived property" as that phrase is defined in 18 U.S.C. § 1957(f)(2) because the Defendant Properties are properties constituting, or derived from, proceeds obtained from a criminal offense. Specifically, the Defendant Properties constitute, or are derived from, proceeds traceable to wire fraud under 18 U.S.C. § 1343.

8.      The Defendant Properties are also forfeitable under 18 U.S.C. § 981(a)(1)(C) as property that "constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." "Specific unlawful activity" is defined in 18 U.S.C. § 1956(c)(7)(A) to mean "any act or activity constituting an offense listed in section 1961(1) of this title," which, in turn, defines "racketeering activity" to include violations of 18 U.S.C. §§ 1343 and 1957. *See* 18 U.S.C. §§ 1956(c)(7)(A); 1961(1).

### JURISDICTION AND VENUE

9.      Plaintiff brings this action *in rem* to forfeit and condemn the Defendant Properties. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

10.      This Court has *in rem* jurisdiction over the Defendant Properties under 28 U.S.C. § 1355(b). Upon the filing of this Complaint, the Plaintiff requests that the Clerk of Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the Plaintiff will execute upon the Defendant Properties pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

11.      Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because Defendant Properties A through D are in this District.

## FACTS

12.     Beginning in October of 2021, an Account Specialist for the City of Cottage Grove, Minnesota, whose initials are "A.B.," fell victim to an electronic-fund transfer ("EFT") wire fraud scheme while acting in an official capacity. A.B. was responsible for managing Cottage Grove city funds. As a result of the fraud scheme, the City suffered a loss of $1,276,061.33.

**I.      The City fell victim to a fraud scheme.**

13.     On or about June 16, 2021, the City entered into an agreement for a sewage construction project with Geislinger & Sons, Inc., a Watkins, Minnesota company, for the "South District Sanitary Sewer Project." The contract was agreed upon for a total amount of $3,558,880.50 and was signed by Jeff Geislinger, the President of Geislinger & Sons, Inc.

14.     On or about October 11, 2021, A.B. began receiving correspondence from a Geislinger & Sons email address, petey@geislingerandsons.com, which A.B. knew to belong to the legitimate Geislinger & Sons Office Manager. A.B. sent Geislinger & Sons a request for their Form W9 and EFT authorization form to establish the business as a vendor in the City's accounting system. The EFT form is a standardized form used by the City. Vendors complete the form with their banking information and provide it to the City to receive payment for services rendered.

15.     On or around October 12, 2021, A.B. received an email from the legitimate Geislinger & Sons email address with a completed Form W9 and an EFT authorization form. A.B. saved both forms, updated the information, and entered the EFT authorization

form information. A.B. replied to that email that the forms were received, and the information was recorded.

16.     On or around October 13, 2021, A.B. sent an Automated Clearing House ("ACH") payment in the amount of $489,746.61 to Geislinger & Sons. A.B. sent a message to the Geislinger & Sons email account that the payment was to be released to Geislinger & Sons on October 21, 2021.

17.     On October 18, 2021, an unknown individual (the "Imposter") sent A.B. an email from the email account jgeislinger@geislingerandsonsinc.com (the "Imposter Email Account") in which the Imposter impersonated a Geislinger & Sons employee using a "lookalike" internet domain name. The Imposter Email Account ended in "inc.com," unlike the "geislingerandsons.com" address used by legitimate Geislinger & Sons employees. The email signature used by the Imposter Email Account read that it was from "Jeff Geislinger, President/CEO, Geislinger & Sons."

18.     The October 18, 2021 email from the Imposter Email Account, falsely posing as Jeff Geislinger, asked A.B. about the status of an invoice for Geislinger & Sons. A.B. responded to the Imposter Email Account that a request to pay invoice was submitted to the Cottage Grove City Council for approval at its October 20, 2021 meeting and that payment was expected to be released on October 21, 2021.

19.     On October 19, 2021, the Imposter Email Account replied to A.B.: "Thank you for the information. I would like to inform you that Geislinger & Sons have made some company financial changes and moved all its banking to a new bank. Please see attached ACH form and kindly update our vendor profile in your payment system immediately to

6

ensure timely payment of invoices." A.B. then received a City of Cottage Grove EFT form from the Imposter Email Account listing new banking account information, specifically a PNC Bank account with number 5530038113. A.B. replied that Geislinger & Sons' payment information would be updated, and the payment would be released the following week.

20.     On October 27, 2021, A.B. again received an email from the Imposter Email Account asking when the invoice payment would be sent. A.B. responded that the payment was sent on October 21, 2021, and the Imposter should check with their old bank. A.B. told the Imposter that payment could not be reissued until the city received notice from the receiving bank that the wire transfer was unsuccessful. A.B. received a reply from the Imposter, again posing as "Jeff," indicating that he would check with their old bank, and that he wanted to confirm that the new bank information had been updated for future invoice payment. A.B. confirmed the information had been updated.

21.     On November 3, 2021, A.B. replied to the email thread with the Imposter Email Account confirming that the first payment in the amount of $498,746.61 had been deposited to the old bank account (the legitimate Geislinger & Sons account). A.B. stated the second payment would be made on November 18, 2021, to the new bank using the information the Imposter had provided a month earlier.

22.     The Imposter responded the next day asking for confirmation of the amount to be paid in the second payment. A.B. replied that the second payment would be in the amount of $813,250.35 for work completed through October 29, 2021. The Imposter replied that they would be sending new ACH/EFT bank information for the second

7

payment. A.B. replied, asking if it would be different than the bank information provided on October 19, 2021 (PNC Bank account #5530038113), to which the Imposter replied, "yes this is different. I will send the form back tomorrow. Thank you."

23.     On November 5, 2021, the Imposter replied to A.B. with a new Cottage Grove EFT form, now listing a J.P. Morgan Chase bank account #708171803 (the "First JPMC Account"). A.B. received another email from the Imposter ten days later asking if the payment information had been updated, to which A.B. replied affirmatively.

24.     On November 26, 2021, the City sent an EFT of $813,250.35 to the First JPMC Account. The transfer was successful.

25.     On December 15, 2021, the City sent another payment for the contract via an EFT for $462,810.98, again to the First JPMC Account. This transfer was also successful. The two wire payments to the First JPMC Account totaled $1,276,061.33.

26.     The City would not have sent either payment to the First JPMC Account had they known the Imposter was not a legitimate agent of Geislinger & Sons.

27.     On December 22, 2021, the legitimate Geislinger & Sons company contacted the City's Finance Director (whose initials are "R.R.") to ask about nonpayment of two outstanding invoices, reporting that Geislinger & Sons had not received either the $813,250.35 payment or the $462.810.98 payment. R.R. responded that A.B. had been corresponding with Jeff, the president of the company, over email. The Office Manager told R.R. that Jeff had been in Florida for the past several weeks. At this point, the City staff realized they had fallen victim to a wire fraud scam, which resulted in the loss of $1,276,061.33 of City funds.

**II.     Law enforcement traced the proceeds of the fraud to various bank accounts.**

28.     City staff reported the loss to the Cottage Grove Police Department.

29.     Cottage Grove Detective and Homeland Security Investigations ("HSI") Task Force Officer ("TFO") Jordan Ziebarth, in his capacity as a peace officer in the State of Minnesota, applied for and received a state search warrant under seal for the First JPMC Account on December 22, 2021.

30.     Bank records revealed the First JPMC account was opened on or about March 11, 2021 and was held in the name of Phoenix Hospitality Holdings, LLC. Phoenix Hospitality Holdings, LLC is a limited liability company registered in the State of Delaware as of March 8, 2021, and its listed members are Taylor Ronald Woods and Howard Chorng Jeng Wu. Additional investigation revealed that Woods and Wu are real individuals and not false identities.

31.     TFO Ziebarth requested the bank freeze the First JPMC Account to prevent loss and transfer of the stolen funds, but only $538.02 remained in the account.

32.     Bank records for the First JPMC account revealed that prior to the deposit of the $813,250.35 wire transfer from the City of Cottage Grove on November 26, 2021, the daily ending account balance of the First JPMC Account was $60.00 on November 22, 2021. But after the deposit from the City, the funds were soon transferred from the First JPMC Account to various other bank accounts and individuals, including to the following bank accounts:

| Date | Amount | Receiving Account | Held in the name of |
|---|---|---|---|
| 11/30/21 | $60,000.00 | Zions Bancorporation account #981266232 | Broadbent Law PLLC |

| 11/30/21 | $3,000.00 | Wells Fargo account #7925580768 | W Square Group |
| 12/2/21 | $45,000.00 | Wells Fargo account #7925580768 | W Square Group |
| 12/3/21 | $100,000.00 | Commonwealth Business Bank account #350000527 | Urban Realty and Management Inc |

33.     In addition to the above transfers, there were two more wire transfers from the First JPMC Account to a second JP Morgan Chase bank account, Defendant JP Morgan Chase bank account #787569737 (the "Second JPMC Account"), also held in the name of Phoenix Hospitality Holdings, LLC. First, $560,000.00 was transferred from the First JPMC Account to the Second JPMC Account on December 8, 2021. Second, an additional $460,000.00 was transferred from the First JPMC Account to the Second JPMC Account just a day after the City's second deposit of $462,810.98 was received.

34.     On December 29, 2021, the Second JPMC Account was frozen with a remaining balance of $75,662.60. Bank records revealed the Second JPMC Account had a $0.00 beginning balance when it was created on December 8, 2021, and the only deposits to the account were the two direct wire transfers from the First JPMC Account on December 8, 2021, and December 16, 2021, totaling $1,020,000.00.

35.     Following the deposit of funds from the First JPMC Account, the funds in the Second JPMC Account were again transferred to various other bank accounts and individuals, including the following transfers:

| Date | Amount | Receiving Account | Held in the name of |
| --- | --- | --- | --- |
| 12/8/21 | $7,500.00 | Wells Fargo account #7925580768 | W Square Group |
| 12/20/21 | $15,000.00 | Wells Fargo account #7925580768 | W Square Group |

| 12/10/21 | $15,000.00 | Commonwealth Business Bank account #350000527 | Urban Realty and Management, Inc. |
| 12/13/21 | $250,000.00 | Zions Bancorporation account #981266232 | Broadbent Law PLLC |
| 12/14/21 | $175,000.00 | Zions Bancorporation account #981266232 | Broadbent Law PLLC |
| 12/16/21 | $115,000.00 | Zions Bancorporation account #981266232 | Broadbent Law PLLC |
| 12/17/21 | $100,000.00 | Zions Bancorporation account #981266232 | Broadbent Law PLLC |
| 12/22/21 | $125,000.00 | Evolve Bank and Trust account #9600001123218069 | Talysman Global Limited |

36.     To prevent loss and further transfer of the funds traceable to the wire-fraud scheme, law enforcement froze the following accounts containing the following proceeds traceable to the fraud scheme:

| Account description | Held in the name of | Remaining balance |
|---|---|---|
| Commonwealth Business Bank account #350000527 | Urban Realty and Management | $75,466.10 |
| The Second JPMC Account #787569737 | Phoenix Hospitality Holdings LLC | $75,662.60 |
| Wells Fargo account #7925580768 | W Square Group | $1,576.35 |
| Zions Bancorporation account #981266232 | Broadbent Law LLC | $594,168.50 |
| Evolve Bank and Trust account #9600001123218069 | Talysman Global Limited | $102,964 |

37.     United States Magistrate Judge John F. Docherty authorized seizure warrants for the following funds in the following accounts on August 1, 2022:

| Case no. | Account description | Held in the name of | Remaining balance |
|---|---|---|---|
| 22-mj-611 | Commonwealth Business Bank account #350000527 | Urban Realty and Management | $75,466.10 |
| 22-mj-612 | Evolve Bank and Trust account #9600001123218069 | Talysman Global Limited | $102,964 |
| 22-mj-613 | The Second JPMC Account #787569737 | Phoenix Hospitality Holdings LLC | $75,662.60 |

| 22-mj-614 | Wells Fargo account #7925580768 | W Square Group | $1,576.35 |
| 22-mj-616 | Zions Bancorporation account #981266232 | Broadbent Law LLC | $594,168.50 |

38.     Law enforcement executed the warrants and seized the contents of four of the above-described accounts. The fifth warrant, issued in case number 22-mj-612 for Evolve Bank and Trust account #9600001123218069 held in the name of Talysman Global Limited, is held by a bank owned and managed by an entity based in the United Kingdom. The bank agreed to voluntarily freeze the account as a courtesy, pending execution of the warrant under the laws of the United Kingdom.

39.     That warrant was executed by delivering it to the Central Authority of the United Kingdom. On February 7, 2023, the Crown Court at Southwark, in London, England, United Kingdom, issued a Restraining Order Prohibiting Disposal of Assets against Talysman Global Limited, and Suren Shyam Shewaramani, judicially restraining them from disposing of or dealing with "[a]ll funds up to the value of US $102,964 held within account number, 9600001123218069, in the name of Talysman Global Limited at Evolve Bank and Trust."

**BASIS OF FORFEITURE**

**COUNT 1**
**18 U.S.C. § 981(a)(1)(C) for violations of 18 U.S.C. § 1343**

40.     The allegations in the preceding paragraphs are realleged and incorporated by reference.

41.     Under 18 U.S.C. § 1343, "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or

fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice," commits the offense of wire fraud.

42.    And under 18 U.S.C. § 981(a)(1)(C), "Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense" is subject to forfeiture to the United States.

43.    18 U.S.C. § 1956(c)(7) defines "specified unlawful activity" to include "any act or activity constituting an offense listed in section 1961(1) of this title." 18 U.S.C. § 1961(1), in turn, defines "racketeering activity" to include "any act which is indictable under . . . section 1343 (relating to wire fraud)."

44.    As is described above, the Defendant Properties constitute or are derived from proceeds traceable to wire fraud. As a result, they are subject to forfeiture to the United States pursuant to 18 U.S.C. 981(a)(1)(C).

**COUNT 2**
**U.S.C. § 981(a)(1)(A) for violations of 18 U.S.C. § 1957**

45.    The allegations in the preceding paragraphs are realleged and incorporated by reference.

46.    18 U.S.C. § 1957 prohibits monetary transactions in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity. "Criminally derived property" is any property constituting, or derived from, proceeds

13

obtained from a criminal offense. 18 U.S.C. § 1957(f)(2). The statute defines "specified unlawful activity" by reference to 18 U.S.C. § 1956, which includes wire fraud. 18 U.S.C. § 1956(c)(7)(A) (incorporating wire-fraud offenses by reference to "any act or activity constituting an offense listed in section 1961(1) of this title").

47.     Under 18 U.S.C. § 981(a)(1)(A), "Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property" is subject to forfeiture to the United States.

48.     As set forth above, the Defendant Properties each constitute or are derived from proceeds traceable to transactions that constitute violations of 18 U.S.C. § 1957. As a result, the Defendant Properties are subject to forfeiture to the United States under 18 U.S.C. § 981(a)(1)(A).

## CLAIM FOR RELIEF

49.     Plaintiff requests that the Court issue a warrant for the arrest and seizure of the Defendants *in rem*, and that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendants *in rem*.

50.     Plaintiff further requests that Defendants *in rem* be forfeited and condemned to the United States of America, and that Plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as this Court deems proper and just.

14

Dated: March 3, 2023

ANDREW M. LUGER
United States Attorney

*/s/Lucas B. Draisey*

BY:  LUCAS B. DRAISEY
Assistant U.S. Attorney
Attorney ID No. 0401625
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone:  612-664-5600
Lucas.Draisey@usdoj.gov

**VERIFICATION**

I, Joseph C. Jarvis, verify and declare under penalty of perjury as follows:

I am and have been a Special Agent for the United States Department of Homeland Security, Homeland Security Investigations since January of 2020. I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and verify that the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information provided to me by other law enforcement agencies and officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and officers, as well as my investigation of this case, together with others, as a Special Agent with Homeland Security Investigations.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: March 3, 2023

*/s/Joseph C. Jarvis*
JOSEPH C. JARVIS
Special Agent
U.S. Department of Homeland Security,
Homeland Security Investigations

16